(75 South. 70)

No. 22188.

Succession of PONS.

(On Motion to Dismiss, Oct. 16, 1916. On the Merits, April 16, 1917.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ☞73(2)—ON MOTION TO DISMISS APPEAL—RIGHT OF APPEAL—CREDITOR.

Where a creditor of the succession, in the sum of $65,000, in lieu of security from the executor, agreed to accept the appointment of judicial depositary of the funds and assets of the succession, and the agreement was ratified by the court, and executed, without objections from creditors and heirs, and thereafter the court ordered the funds and assets of the estate to be transferred to another judicial depositary, without requiring the executor to give security to the creditor as prayed for, and required by law, *held*, that the creditor was entitled to an appeal to the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 404.]

*(Additional Syllabus by Editorial Staff.)*

On the Merits.

2. JUDGMENT ☞481—ORDER—CONSTRUCTION AS JUDGMENT.

Where a bank, the creditor of a succession, in lieu of security from the executor which it might require under Rev. Civ. Code, art. 1677, agreed to accept the appointment as judicial de-

positary of the funds of the succession, an order or judgment that the executor continue to deposit in such depositary all cash and notes coming into his hands, to be paid out or withdrawn only upon order of the court, after notice, not appealed from, was a judgment proper rendered between the parties qualified to stand in judgment and upon the equivalent of regular pleadings, and hence must be given effect until set aside in some method prescribed by law.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 917.]

3. JUDGMENT ☞487—VALIDITY.

A judgment rendered between the proper parties and on proper pleadings is not null because it decrees the enforcement of an agreement which was null.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 921, 1256.]

4. JUDGMENT ☞487 — ENFORCEMENT OF AGREEMENT—VALIDITY.

A judgment decreeing the enforcement of a null agreement ipso facto adjudicated it to be valid.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 921, 1256.]

5. JUDGMENT ☞481—COMPROMISE JUDGMENT.

A compromise judgment is a judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 917.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

In the Succession of Mrs. Widow Antoine Pons, née Marie Madeline Carcagno, in which the court ordered that all funds and assets of succession be deposited in the Bank of Orleans, and thereafter ordered the funds turned over to the clerk on executor's order, and to be placed in Metropolitan Bank, as a judicial depositary, until further orders, and dismissing demands of the Bank of Orleans, without affecting its claim as a creditor, and the Bank of Orleans was granted an appeal. Motion of testamentary executor to dismiss appeal denied, and order or judgment appealed from set aside and annulled.

Denegre, Leovy & Chaffe, of New Orleans, for Bank of Orleans, Adm'r, pro tem. of appellant, Mrs. Pons. Dart, Kernan & Dart, of New Orleans, for appellees, Mrs. Josephine Ruiz and others. P. L. Fourchy and Wood-

ville & Woodville, all of New Orleans, for appellee Testamentary Ex'r.

## On Motion to Dismiss Appeal.

LAND, J. It appears from the record that on April 19, 1916, the judge a quo entered an order that all the funds and assets of the succession of Mrs. Pons be deposited in the Bank of Orleans, and that on June 26, 1916, after hearing the rules of the executor and other parties for the transfer of said funds and assets to the Metropolitan Bank, the judge on his own motion rendered a judgment dismissing said rules, with costs; and further ordering that the funds and assets aforesaid then on deposit with the Bank of Orleans be removed therefrom and turned over to the clerk of the civil district court, on the order of the executor, by said clerk to be placed in the judicial depositary of said court, to wit, the Metropolitan Bank, there to remain until paid out, or removed, on the further orders of the court.

In the same judgment the court further ordered that said order of April 19, 1916, be annulled and set aside, in so far as it directed the deposit of said succession funds and assets with said Bank of Orleans, and that all arrangements between the parties regarding such deposit with said bank on its payment of 3 per cent. interest be avoided and annulled.

It is to be noted that the order of June 19, 1916, is a repetition of a similar order rendered by Judge Skinner on February 10, 1916.

By the terms of the judgment, the demands of the Bank of Orleans were dismissed, but its claims as a creditor, with privilege or pledge on said funds or assets, was not to be affected by the decree.

On the motion of the Bank of Orleans, an order for an appeal was granted as follows:

"It is ordered that a suspensive appeal be granted to said movers, the Bank of Orleans as administrator pro tempore of Mrs. M. M. Pons, and individually, and Lazarus, Michel, and Lazarus and Frank N. Butler, returnable to the Supreme Court of the state of Louisiana on the 31st day of August, 1916, upon movers furnishing good bond and security conditioned as the law directs and provides in the sum of $71,000, the amount on deposit of funds belonging to said estate and costs."

The Bank of Orleans furnished an appeal bond in the sum of $71,000, with the United States Fidelity & Guaranty Company as surety thereon.

[1] The testamentary executor has filed a motion to dismiss this appeal on three grounds, which may be briefly stated as follows:

Because the judgment or order appealed from is an interlocutory one, rendered ex proprio motu by the judge.

Because the amount of cash in said Bank of Orleans belonging to said estate is $70,515.02, plus interest on daily balances, and also two negotiable mortgage notes each for the sum of $40,000, and said bank has no right of appeal.

Because the law provides and fixes the bond at one-half over and above the amount in said bank, which would make the bond over $200,000.

The third ground for dismissal is without merit. In all cases where the judgment is not for a "specific sum," the judge fixes the amount of bond. C. P. 574, 575.

The second ground states no legal reason for dismissal, and the averment therein that the "bank has no right of appeal" may be considered in connection with the first ground that "the judgment or order is an interlocutory one."

An appeal will lie from an interlocutory judgment when such judgment may cause an irreparable injury. C. P. 566.

In Succession of Hart, 127 La. 833, 54 South. 46, this court held that a judicial depositary holding property "subject to the further orders of the court" has no standing to contest the validity of an order of the court

for the delivery of the deposit to another depositary.

But in the present case, the appellant bank contends that, under previous orders of the same court, it had acquired certain legal rights over said funds of such a nature that their divestiture may cause said bank an irreparable injury. The record facts relative to this contention may be briefly stated as follows:

The Bank of Orleans held recorded claims against the succession of Pons, aggregating about $65,000.

After the sale of all the immovables of the estate, the executor filed a. rule against all the parties in interest to cancel their inscriptions from the record.

The bank during the pendency of the rule "suggested its intention to ask bond from the testamentary executor, in accordance with law," and "the parties having suggested and agreed that in lieu of asking for a bond, which would incur additional expenses to the estate, it would be agreeable to deposit the proceeds of sale in the official account * * * of the testamentary executor in the said Bank of Orleans."

The court thereupon ordered the testamentary executor to continue to deposit in the Bank of Orleans all cash and notes that may come into his hands, "the same to be paid out or withdrawn by the said testamentary executor only upon the order of court after notice to H. P. Dart, attorney for Mrs. Ruiz, Mrs. A. Veasey, Mrs. George Louque, Mrs. Blanche Louque, and Walter Pons, five of the heirs of decedent, and to said Bank of Orleans, the said account to bear 3 per cent. interest per annum on daily cash balances."

The executor, Fourchy, and several creditors, subsequently filed rules for the transfer of the funds and assets of the succession from the Bank of Orleans to the Metropolitan Bank.

These rules were dismissed, with costs, as were also the demands of the Bank of Orleans in return to said rules; and the judge below by virtue of his supervisory authority over the administration of the estate, after dismissing all the litigants from the proceeding "of its own motion," proceeded to render the judgment of June 26, 1916, which was duly signed on June 30, 1916.

The judge treated the order or decree of April 19, 1916, as an absolute nullity, because "it was based on an agreement between the testamentary executor and the Bank of Orleans, which they were without capacity to make, and which is binding neither on the court, nor on the creditors of the estate."

Our learned brother, however, recognized the legal right of the Bank of Orleans to an appeal from his ruling.

Whether the decree of June 19, 1916, was an absolute nullity is a question on which the appellant has a right to be heard, and one which we cannot decide on a motion to dismiss.

The judgment below deprived the appellant of a valuable security for his large claims against the estate.

As stated supra the order or decree of April 19, 1916, was a duplicate of a similar order rendered on February 10, 1916. In other words, the bank permitted the executor to administer the large estate without bond on the faith of the validity of these orders. There is nothing in the record to suggest that the security of the deposits once lost can be replaced by the bond of the executor for some $80,000, or for any other considerable amount.

If the judgment below is executed, we know of no subsequent proceeding in the succession in which it can be brought up for review on appeal as an interlocutory order.

One of the "demands" in the answer to the rule sued out by Fourchy, the executor, is that, under the facts and circumstances of the case, no order should be entered by the court authorizing said executor to remove

said funds from the Bank of Orleans, unless accompanied by an order of the court directing said Fourchy to give bond according to law in favor of said bank, which prayed that "should the court order the transfer of funds from respondent bank, that said Fourchy, executor, be ordered to furnish bond in favor of the respondent as required by law in the sum of not less than $65,000."

The judgment below dismissed this demand, with costs.

A number of cases in our reports show that the Supreme Court has exercised jurisdiction, where the rights of creditors, under C. C. 1677, to require bond of executors, has been involved. See notes under article 1677, Merrick's Civil Code (Second Edition).

It is therefore ordered that the motion to dismiss be overruled.

### On the Merits.

PROVOSTY, J. For consummating the sale of the real estate of the succession, which had been adjudicated at auction, the inscription of the mortgages and privileges resting thereon had to be canceled. The executor took a rule on the mortgage and privilege creditors to show cause why the cancellation should not be made. One of them, the appellant the Bank of Orleans, informed him that it would require him to furnish bond·as provided in article 1677, C. C., reading:

"Any person having a claim for money against the succession, or claiming the ownership of specific property in possession thereof, whether such claim be liquidated or not, can compel the testamentary executor to give security for an amount exceeding by one-fourth the amount of money or the appraised value of the property claimed.

"For this purpose he shall present in open court or in chambers, to the judge of the court wherein the succession has been opened, his petition, alleging under oath ·the sum due him or his ownership of the property described.

"It shall be the duty of the judge, without further proceeding or delay, to issue his order commanding the testamentary executor to give the required security within thirty days from the service of the order. Should the testamentary executor, if present in the parish, or in his absence, his agent or his attorney at law, fail to furnish the required security within the delay allowed, it shall ipso facto work an immediate removal of the testamentary executor, and the judge shall appoint a dative testamentary executor."

[2] To obviate the giving of this bond, which would be an expense to the succession and trouble to the executor, the executor and the heirs and the bank, which is one of the chartered banks of the state, qualified to receive official deposits, came to an agreement which was embodied in the judgment on the rule as follows:

"And the Bank of Orleans, defendant in rule, having suggested its intention to ask for a bond from the testamentary executor in accordance with law, and the suggestion having been made that the proceeds, whether in cash, or notes, or both, arising from the said sale of property and the administration of the testamentary executor should be deposited in his official account, and the said parties having suggested and agreed that in lieu of asking for a bond, which would incur additional expenses and expenses to the estate, it would be agreeable to all parties to deposit the proceeds in the official account above mentioned of the testamentary executor in the said Bank of Orleans.

"It is further ordered that P. L. Fourchy, testamentary executor, be and he is hereby authorized and directed to continue to deposit in the Bank of Orleans all cash and notes that may come into his hands as executor from whatever source arising without prejudice to any lien, privilege, pledge, or preference that may be claimed against said cash or notes to be paid out or withdrawn by the said testamentary executor only upon order of court after notice to H. P. Dart, attorney for Mrs. J. Ruiz, Mrs. A. Veazey, Mrs. George Louque, Mrs. Blanche Louque and Walter Pons, five of·the heirs of decedent, and the said Bank of Orleans, the said account to bear 3 per cent. interest per annum on daily cash balances. The rent notes on Canal street property claimed to be held by the Bank of Orleans, as pledgee or the proceeds thereof for rents from April 4, 1916, to expiration of lease, to be surrendered by the Bank of Orleans to purchaser of said Canal street property at the time of execution of act of sale, reserving all rights of said Bank of Orleans, if any, as pledgee, upon the proceeds of said sale."

This judgment was rendered on February 10, 1916. Four months later, in June, 1916, the executor took a rule on the bank and on all parties concerned to show cause why the funds should not be transferred to the Metropolitan Bank, which was offering a quarter

per cent. more interest. The court dismissed this rule, but, in the same judgment, proceeded ex proprio motu to annul the judgment of February 10th, and to order the transfer to be made, giving its reasons as follows:

"Considering that, by law, the seisin of the estate of deceased is vested in the testamentary executor, which he cannot abdicate, or bargain away, and considering that the order of April 19, 1916, was based on an agreement between the testamentary executor and the Bank of Orleans, which they were without capacity to make, and which is binding neither on the court, nor on the creditors of the estate, and that said order was improvidently granted, and considering that neither the Bank of Orleans nor the testamentary executor is under bond, with approved surety, for the protection of the creditors, or heirs of the estate, and further, that the Metropolitan Bank, as the judicial depositary of the court, is under ample bond, with good and solvent surety, for the safe-keeping of all funds, or assets, deposited with it as such judicial depositary, and that funds thus deposited cannot be disturbed, or withdrawn, without the order of the court, and draw interest at 4.01 per cent. on daily balance from date of deposit:

"It is therefore ordered, adjudged and decreed. * * * "

The judgment reserves to the Bank of Orleans "its right, if any it may have, to demand security from the executor." From this order the Bank of Orleans has taken the present appeal.

Whether the court has authority to set aside in that manner the judgment of February 10th, by which in pursuance of an agreement, or compromise, the custody of the funds was given to the Bank of Orleans, which judgment had not been appealed from, and therefore had become res judicata, is the question on the present appeal.

Before proceeding to the discussion of it, it may be well to disentangle it from all idea that the court had any authority or control over the fund in question such as a court might have over a fund in gremio legis. The proper and only legal custodian of the fund was the executor himself, subject only to the obligation imposed by law upon executors and administrators to deposit in one of the chartered banks of the state the funds under their control. The matter has to be viewed therefore as one between the executor and the appellant bank, with which the trial court had no further connection than of deciding the issues presented to it for decision by the pleadings.

But while the court, after having dismissed the rule of the executor, professed in its further action to be acting ex proprio motu, it in reality was acting on this rule, since its action conformed with the prayer of the rule to the letter. And, therefore, since we have to look to substance and not to mere form, we must deal with the situation as if instead of dismissing the rule the court had sustained it and had, on rule taken by the executor, annulled the judgment of February 10th.

The executor would not, and does not, contend that after a judgment has become final the court which rendered it can set it aside on rule; but contends that the so-called judgment in question was not a judgment proper, adjudicating some issue, but was a mere order such as might be set aside at any time by the court which had made it.

The situation, we must say, is peculiar. The so-called judgment of February 10th was rendered without any pleadings having been filed asking for it, and pleadings of some kind seem to be an essential prerequisite to a judgment, otherwise there would seem to be no issue presented for decision, and the action of the court be a mere administrative order. But while no pleadings were filed, it is very evident from the terms themselves of the said judgment that an issue had arisen between the parties, namely, as to whether the inscription of the privilege of the appellant bank should be ordered to be canceled until the executor had been ordered to execute the bond required by article 1677 of the Code; and it is very evident that the said judgment was rendered for the settlement of that issue, and that it was so rendered in pursuance of an agreement which the par-

ties chose to treat as the equivalent of regular pleadings such as might serve as the basis for a judgment.

Under these circumstances we think this so-called judgment must be held to be a judgment. It was rendered between parties qualified to stand in judgment, and upon what we hold to have been the equivalent of regular pleadings. Such being the case, we must hold that it had to be given effect until set aside in one of the modes prescribed by law.

[3, 4] Our learned brother has treated it as a nullity for the reason that the executor was without authority to enter into the agreement in question. But that reason addresses itself only to the correctness of the judgment, not to its validity as a judgment. A judgment rendered between proper parties and on proper pleadings is not null because it decrees the enforcement of an agreement which was null. The time to consider whether the agreement in question in this case was null or not was before judgment had been rendered enforcing it. By decreeing its enforcement the judgment ipso facto adjudicated it to be valid.

[5] The judgment was a compromise judgment, but a compromise judgment is a judgment. The consideration moving to the executor and the heirs was that the succession should be saved the expense and the executor the trouble of giving the large bond which would have had to be given to the bank; the consideration moving to the bank was that the funds should remain on deposit in its hands where the executor had the perfect right to leave them. So based upon these mutual considerations, the judgment was a whole, an inseverable whole, valid as a whole or invalid as a whole. The executor could not treat it as valid in so far as operating in his favor for the cancellation of the bank's privilege, and treat it as a nullity in so far as operating in favor of the bank as security in place of the bond.

On this appeal the executor has offered to furnish the said bond, and thereby to "accede to the demand for the said bond." But the bank is not now demanding any bond. By the said judgment its right to demand said bond was converted into the right to retain the fund; and that judgment, so long as not set aside in one of the modes prescribed by law, operates as the law of the case, governing the rights of the parties. The bank has now no right to demand that said bond be given; and the executor has now no right to demand that it be substituted to the funds.

The judgment appealed from is set aside and annulled at the cost of the succession of Mrs. Marie M. Pons.

MONROE, C. J., takes no part.